STEVE BIDDICK V. STATE OF NEBRASKA.

FILED OCTOBER 26, 1925.    No. 24711.

1. **Criminal Law:** EVIDENCE. It is elementary that persons accused of crime are to be tried upon competent evidence alone and none other.

2. ————: APPEAL: REFUSAL OF CONTINUANCE. "A judgment will not be reversed by the supreme court on account of the refusal to grant a continuance unless there has been an abuse of a sound legal discretion by the district court." *Dilley v. State*, 97 Neb. 853.

3. **Arson:** SUFFICIENCY OF EVIDENCE. Upon examination, *held* that the verdict is amply supported by the evidence.

ERROR to the district court for Cass county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*Charles E. Martin* and *A. L. Tidd,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Harry Silverman, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DEAN, J.

Steve Biddick, defendant, was convicted of arson in Cass county and sentenced to serve an indeterminate period of not more than three and not less than one year in the penitentiary. He prosecutes error.

October 18, 1924, at about eight in the evening, a destructive fire was discovered in a Burlington railroad company warehouse at Plattsmouth. When the city fire department arrived, very shortly thereafter, the building was enveloped in flames and in a few hours with its contents, was entirely destroyed, causing a loss approximating $17,000. The building was roofed with fireproof material and no refuse was within or about it which might have caused the fire or hastened its progress. No electric wiring was used, nor was there any within a block of the building, nor was any locomotive there after 3 o'clock in the afternoon.

The chief of the fire department is an experienced fire fighter and inspector of fire-swept structures. His evidence, and that of other witnesses, tends to prove that, from the rapidity in which the flames spread after the fire was first discovered, inflammable material had been placed in and about the warehouse by an incendiary.

Defendant worked under William Baird, shop foreman, for about two years, but was discharged by the company a few weeks before the fire because he was the cause of a serious injury to another employee. He resented the discharge and wrote a letter voicing his complaint to the president of the railroad company at Chicago. He also held a grudge against Baird because of his loss of employment, and wrote an anonymous letter to him, October 27, 1924, at Plattsmouth. He admitted authorship of the letter, but denied mailing it. But the jury doubtless noted the evident similarity of the handwriting of the letter and the envelope. The letter follows:

"William Baird this is not a threat you have outlived your usefulness here. We give you two days to get out of town dead or alive."

Donald Smiley, a car repairer, testified that defendant complained to him about having been discharged, but said there was plenty of time "to get even;" that he caused the fire, and that the proof having been destroyed he had an alibi; that he lamented the fire was not more destructive;

and attributed this to the fact that there was not "wind enough and they fought fire better than I thought they could." Defendant explained to the witness in detail how he started the fire. In substance he said that he took candles and a flask of gasoline to the warehouse and concealed the lighted candles from view and from the wind by a cover, which he described. He explained that when the flame burned down to the socket of a candlestick it came in contact with the oiled waste and, when ignited, the fire quickly spread over the building. But his incendiary contrivance was so timed that about an hour and a half would elapse before the burning flame from any of the candles could reach the waste, and this gave him time to make his escape before the fire could be discovered. Defendant also told the witness that he held membership in a secret organization for 35 years, and that in 3 days, with help from his fellow members, in St. Louis, he could put Baird out of the way. He further informed him that he was "figuring on a damage suit," and that "half of it (the proceeds) was to go" to those who helped him get it.

It seems that another witness overheard defendant's talk to Smiley in which defendant explained that registry in a hotel was good proof of an alibi. Aside from this, the witness testified that he did not know the import of defendant's talk, other than that it indicated a deep seated and malevolent dislike for shop foreman Baird.

Defendant testified in his own behalf. As noted above, he admitted authorship of the letter, and that he kept candles on hand when he lived at the hotel and also at a private home when he boarded there. But he said he kept them for use in the event the electric lights at either place should go out. Doubtless, the jury were not favorably impressed by his explanation of the candle incident, nor by the Baird letter, nor by the following statements attributed to him by witness Smiley, namely: That he "had a good alibi on the shop fire * * * because he was registered at the hotel; * * * and that he could be 500 miles away and establish an alibi by the hotel register;" and in that he tried

to induce Smiley "to start fires to burn out the shops;" and of his threat "to put 100 pounds of dynamite under Mr. Baird's house." These admissions, if believed by the jury, when considered with all the evidence in the record, doubtless tended strongly to convince the jury of guilt. But he denied the truth of Smiley's evidence in respect of practically all of his admissions except as herein noted. It will be remembered, however, that this evidence was in part corroborated by the witness who overheard some of the conversation between Smiley and defendant. Defendant also introduced some evidence in an attempt to establish an alibi, but the jury evidently gave no credence to the testimony which he offered in this behalf. In brief, all of the evidence, disclosed by the record, was submitted to the jury under instructions which properly informed them of their duty in respect of every material issue. And the jury were not only the triers of questions of fact but of the credibility of the witnesses as well. It follows that, where the verdict is supported by the evidence, as here appears, the judgment will not be reversed.

Complaint is made in that, on the cross-examination, the county attorney asked defendant certain questions which tended to reflect upon his conduct at another town in Nebraska in which he formerly lived. Defendant's objections to these questions were promptly sustained. There was, however, another immaterial question put to defendant on the cross-examination, which bore no relation to the facts involved here, and to which he objected, but the question did not impute moral turpitude to defendant nor to any other person. Defendant complains because his objection was overruled. For the reasons given, we do not think reversible error can be predicated on the court's ruling.

It is elementary that persons accused of crime are to be tried upon competent evidence alone and none other. On this vital issue, the court repeatedly and in varying forms of explicit expression so instructed the jury. It may however be observed that if, by inadvertence or mistake, or if for any reason, incompetent evidence should be submitted,

which would tend to prejudicially affect any of the defendant's substantial rights, it is the duty of the court upon proper objection, to inform the jury that such evidence is not to be considered by it as tending to prove the guilt of the defendant. We conclude, as above noted, that on this feature of the present case, in view of the entire record, and in view of the cautionary instructions given by the court, reversible error does not appear.

Counsel for defendant requested the court to give 24 separate instructions to the jury, and of these 4 were given and the remainder were refused. An examination of all the instructions given discloses that the jury were properly instructed on every material issue involved here. Reversible error does not appear in the court's refusal to give the tendered instructions which were refused.

Defendant complains because the court refused to grant a continuance, which defendant's counsel Honorable Charles E. Martin, who was appointed to conduct the defense, deemed necessary to permit him to prepare for trial; and this, in part, on the ground that counsel, so appointed, informed the court that he was inexperienced in the conduct of criminal defenses. Neither the record, nor the argument made before us, seems to support counsel's plea in this behalf. The defense was ably and skilfully conducted throughout and the rights of defendant were well guarded at every point. The court seems to have made no mistake in its appointment, nor in denying the showing for a continuance.

In a recent opinion we said: "A judgment will not be reversed by the supreme court on account of the refusal to grant a continuance unless there has been an abuse of a sound legal discretion by the district court." *Dilley v. State*, 97 Neb. 853. In respect of an application for a continuance in criminal defenses generally, a recent authority says: "Since the court trying the cause is, from personal observation, familiar with all the attendant circumstances, and has the best opportunity of forming a correct opinion upon the case presented, the presumption will be in favor of its

action; and in no case will the exercise of this discretion be reviewed where it manifestly appears that justice has been done without sacrificing the rights of defendant." 16 C. J. 452, sec. 822. We conclude that the court's denial of a continuance comes clearly within the rule announced in both of the above citations, and that the court's ruling did not, on any ground appearing in the record, show an abuse of sound judicial discretion.

Other assignments of alleged error have been presented, which we have examined, but do not find it necessary, in the proper disposition of the present case, to discuss nor to decide. Reversible error has not been shown. The judgment is

AFFIRMED.